**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| JENNIFER G. COHENOUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:05-cv-352-SEB-VSS |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Jennifer Cohenour ("Cohenour") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. BACKGROUND**

Cohenour applied for DIB on July 12, 2002, alleging an onset date of November 15, 2001. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on June 17, 2004. Cohenour was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Cohenour, a medical expert, and a vocational expert testified.

The ALJ denied Cohenour's application on October 22, 2004. On January 14, 2005, the Appeals Council denied Cohenour's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed.  The court has jurisdiction over Cohenour's complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."


The ALJ's decision included the following findings: (1) Cohenour had not engaged in substantial gainful activity since November 15, 2001, her alleged onset date; (2) Cohenour was insured for disability insurance benefits on that date and remained insured throughout the relevant period; (3) the medical evidence established that Cohenour had a "severe" impairment, specifically multiple sclerosis, but that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in, the Listing of Impairments; (4) Cohenour's subjective complaints and allegation of total disability were not reasonably consistent with the underlying objective medical and other evidence; (5) Cohenour had the residual functional capacity ("RFC") for light work; (6) Cohenour's past relevant work as a packer required no task inconsistent with her RFC; (7) Cohenour was not disabled at step four; (8) Cohenour was a younger individual with a high school education and no transferable work skills; (9) there were a significant number of jobs, 18,000 assembly jobs, 12,000 cashier jobs, 3,500 machine tender jobs, and 2,400 packer jobs, which Cohenour could do consistent with her RFC and vocational factors; and (10) Cohenour was not disabled at step five, in the alternative. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Cohenour was not entitled to disability insurance benefits based on her application of July 12, 2002.

## II.  DISCUSSION

### A.    Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo*

determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ determined that Cohenour had a severe impairment of multiple sclerosis ("MS"), but that she could perform her past relevant work as a packer and, in the alternative, she could perform a significant number of light jobs. Cohenour argues that the ALJ's decision is not supported by substantial evidence. More specifically, Cohenour contends that the ALJ erred in rejecting the opinion of the testifying medical expert, improperly evaluated the fluctuating symptoms of her MS, and improperly weighed her credibility.

The ALJ acknowledged that medical expert Dr. Tavel testified at the hearing and that he initially opined that Cohenour met the requirements of Listing 11.09. (R. at 18-19). After further questioning, Dr. Tavel ultimately concluded that it was not a "clear cut" case of meeting a Listing but that she medically equaled the requirements of Listing 11.09. (R. at 18-19). Dr. Tavel stated that it was a "very difficult call" and that there were "some mixed signals coming out of that record," but that given the diagnosis of MS and "given the combination of some objective, and some subjective limitations, and the known fluctuation of this kind of disease I would be inclined to come down on the side of accepting a little bit more of her subjective symptoms than perhaps have been stated in the record." (R. at 251). The ALJ determined that Dr. Tavel's opinion lacked a foundation in the medical evidence. (R. at 18-19). The ALJ discredited Dr. Tavel's opinion as to equivalence to the extent Dr. Tavel found Cohenour disabled based on speculation about what *might* occur when the record failed to show that she met the Listing in the first instance. (R. at 19). The ALJ further noted that the State Agency physicians did not find that any listing was met or equaled and that more weight would be accorded to their opinion because it was supported by objective medical evidence and was not inconsistent with other evidence. (R. at 18-19). Because the court can trace the path of the ALJ's reasoning and that reasoning is supported by substantial evidence, the court does not find error in the manner in which the ALJ evaluated the medical expert's testimony.

Cohenour argues that her diagnosis of relapsing-remitting MS carries with it early symptoms of unpredictable muscle weakness and stiffness, blurred vision, and tingling and numbness in the extremities, and that the ALJ failed to credit these symptoms. The ALJ determined that Cohenour's subjective complaints and allegation of total disability were not reasonably consistent with the underlying objective medical and other evidence. (R. at 23). The ALJ acknowledged Cohenour's allegations of unrelenting weakness and fatigue and daily headaches. (R. at 20). He noted her complaints of pain and numbness in her extremities, frequent tremors, problems maintaining her balance, and episodes of blurred

vision and facial drooping. *Id.* He further noted that she performed her household chores more slowly than before and required two to three hours of rest after each activity, she required a wheelchair to get around at home, and climbing stairs was particularly difficult. *Id.* The ALJ recited the appropriate criteria for evaluating a claimant's credibility. (R. at 20, citing SSR 96-7p and 20 C.F.R. § 404.1529(c)(3), and listing each factor). The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001).

The ALJ noted that various doctors, including treating neurologist Dr. Somers, had made findings that showed Cohenour's condition was "essentially the same after her alleged onset date as it was before." (R. at 20). The ALJ stated that Cohenour had remained neurologically intact with normal muscle strength in her upper and lower extremities since her alleged onset date, her gait had stayed steady although she had walked slowly during a few examinations, and she could still walk on her heels and toes as well as heel-to-toe, with only slight or infrequent problems. *Id.* He noted that she was "normal at station." *Id.* He further noted that during several examinations, her coordination was considered normal, which contradicted her claims of imbalance. (R. at 21).[1] The ALJ noted that Cohenour took medications for her headaches. The ALJ discussed the side effects of her MS medications taken by injection, flu-like symptoms for two to three days afterward, but he suggested that she could time her injections to fall on non-work days. *Id.* The ALJ reasoned that a determination of RFC is based on the most, not the least, that a claimant can do considering her impairments. *Id.* The ALJ further found it significant that treating neurologist Dr. Somers qualified his RFC assessment by stating that it was based on what Cohenour had told him, not on medical findings. *Id.* The ALJ questioned Cohenour's motivation to work based on her remarks to physicians. *Id.* In response to those remarks, in November and December of 2001, Dr. Reed and Dr. Schneider, respectively, informed Cohenour that she did not have a disabling disease and there was no medically necessary reason for her not to be able to work. The ALJ did not adopt the full extent of Cohenour's stated symptoms in determining her RFC. He set forth a number of reasons, supported by the record, for finding her less than credible. Under these circumstances, the court cannot find that the ALJ's rationale was "patently wrong."

Cohenour also argues that the ALJ failed to evaluate the frequency of her migraine headaches and the number of days that she would miss work due to her symptoms. Both the medical expert Dr. Tavel, and treating physician Dr. Somer, opined that Cohenour

---

[1] The ALJ stated that there were several inconsistencies in the record. As one example, the ALJ cited Cohenour's report in August 2002 that she "goes to bed with a headache and wakes up with a headache," and her report in June 2001 that she "usually does not go to bed with a headache." (R. at 21, 77, 177). In that same June 2001 report, Cohenour reported daily headaches. (R. at 177). The ALJ failed to recognize, also, that the June 2001 report predates Cohenour's alleged onset date. There is nothing inconsistent about these statements made almost a year apart. This alone, however, does not require remand.

would miss more than four days a month and would have to take frequent breaks at work. (R. at 205-06, 253). The vocational expert opined that such restrictions would preclude all work. (R. at 257). The ALJ did not discuss the opinions concerning how many work days Cohenour might miss, but this is not error in light of the fact that the ALJ discounted the assessment of the severity of Cohenour's symptoms proffered by Dr. Tavel and Dr. Somer, as discussed above.

As the medical expert indicated, this is arguably a close case. The ALJ relied on the opinion of the State Agency physician and the weight of the other evidence in finding that Cohenour could perform light work. (R. at 23). The ALJ discredited the opinion of the treating physician that Cohneour could perform less than sedentary work because the physician stated that he was only estimating her level of functioning based on what Cohenour had told him and that he had made no physical findings which affected her ability to work. (R. at 23, 204). The court may not resolve conflicts in or reweigh the evidence. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). The ALJ sufficiently articulated his assessment of the evidence to assure the court that he considered the important evidence and allow the court "to trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted).

The ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Cohenour's age, education, and work history; (2) Cohenour's history of diagnoses, treatment, medications, and evaluations; (3) Cohenour's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Cohenour, a medical expert, and a vocational expert. Substantial evidence supports the ALJ's findings of fact and assessment of Cohenour's impairment, and there was no reversible error of law in the manner in which the evidence was evaluated.

### III.  CONCLUSION

The final decision of the Commissioner that Cohenour was not disabled as defined in the Act is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Cohenour is not entitled to relief in this action.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/17/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana